**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
900 Third Avenue, 16th Floor
New York, New York 10022
Telephone (212) 752-8000
Facsimile (212) 752-8393
Leo V. Leyva, Esq.
Jill B. Bienstock, Esq.
*Attorneys for Raymond E. Bulin, Rent Receiver Appointed by the Superior Court of New Jersey, Hudson Vicinage, for the Mortgaged Property Owned By 35 Real Estate Limited Partnership*

**Hearing Date: _____ __, 2011 at __:__ _.m. (EST)**
**Objections Due: _____ __, 2011 at __:__ _.m. (EST)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Garden Operation Realty Limited Partnership., | Case No. 11-10668 (SHL) |
| Debtor. | |

**EXPEDITED MOTION OF RAYMOND E. BULIN, THE RENT RECEIVER APPOINTED BY THE SUPERIOR COURT OF NEW JERSEY, FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 365(d)(3) AND 362(d): (I) COMPELLING IMMEDIATE PAYMENT OF POST-PETITION LEASE OBLIGATIONS UNDER THE NON-RESIDENTIAL REAL PROPERTY LEASE AND DIRECTING THE DEBTOR TIMELY PERFORM ALL FUTURE OBLIGATIONS THEREUNDER; AND (II) GRANTING THE RENT RECEIVER PROSPECTIVE RELIEF FROM THE AUTOMATIC STAY IN THE EVENT OF NON-PAYMENT**

Raymond E. Bulin, the Rent Receiver (the "Rent Receiver") appointed by the Superior Court of New Jersey, Hudson Vicinage (the "New Jersey Court"), for the mortgaged property owned by 35 Real Estate Limited Partnership and occupied by the above-referenced debtor (the "Debtor"), by and through his undersigned counsel, hereby files a motion (the "Motion") for an order, in substantially the same form as the proposed Order attached hereto as **Exhibit A**, pursuant to 11 U.S.C. § 365(d)(3): (i) directing the Debtor to timely perform all of its

obligations arising from and after the Petition Date (as hereinafter defined) under the Lease (as hereinafter defined), including the Payment of past due post-petition rent, of which the Debtor is now in default; and (ii) in the event the Debtor fails to timely perform its obligations and fails to remedy its post-petition defaults, granting the Rent Receiver relief from the automatic stay to permit the Rent Receiver to exercise all rights under that certain Lease.  The Rent Receiver respectfully represents:

## I.     JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B)and (O).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II.     BACKGROUND

**A.     Introduction**

3.      On February 17, 2011 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      The Debtor is a tenant of certain premises owned by non-debtor 35 Real Estate Limited Partnership ("35 RELP") and located at 35 UPS Drive, Secaucus, New Jersey 07094 (the "Leased Premises"), pursuant to a Lease Agreement dated August 15, 2006, by and between 35 RELP, as landlord, and the Debtor, as tenant (the "Lease").  (A true copy of the Lease is attached hereto as **Exhibit B**.)  As explained in more detail below, the Debtor and the landlord, 35 RELP, are related parties and because of 35 RELP's default under its mortgage, presently held by DRA Asia, LLC, foreclosure proceedings are pending in the New Jersey Court.  The rent Receiver was appointed to, among other things, collect and enforce the landlord's rights under the Lease.

2

5.     For some time prior to the Petition Date, the Debtor was in default of its payment

obligations with respect to the Leased Premises.  Prior to the Petition Date on January 4, 2011,

the New Jersey Court entered an order binding that there was unpaid rent for the Leased

Premises which as of January 4, 2011 totaled $215,833.35.  Neither that amount, nor the rents for

January or February were paid; nor has the Debtor remitted its post-petition payment for March.

6.     After the Rent Receiver obtained a judgment of possession and the right to evict

the Debtor, the Debtor filed its Petition, acknowledging that it did so only to frustrate the Rent

Receiver's intention to evict the Debtor in favor of a paying tenant.  See Affidavit accompanying

the Debtor's petition, ¶ 13.

7.     As of the date hereof, the Debtor owes monthly rent of $43,166.67 for the month

of March as well as real property taxes of $16,828.50, for total post-petition arrears of

$59,995.17.  Because of extensive history of nonpayment, and the Rent Receiver's unmet

demand for payment of post-petition rent, he has moved for the enforcement of his statutory

rights under 11 U.S.C. § 365(d)(3).[1]

8.     As part of the relief sought, the Rent Receiver requests that the Court enter a

partially self-executing order which will cause the automatic stay to be lifted on two business

days notice to the Debtor should it not timely meet all of its monetary obligations under the

Lease.  Respectfully, under the circumstances of the case this type of relief is not overreaching; it

is fair and warranted.  Over the past many years the Debtor and the landlord, both of whom are

under the sole control of a Mr. Helmer Toro, have played their version of a shell game, with the

objective of maintaining control over the premises without paying any debt service, Rental

---

[1] The Rent Receiver is particularly troubled by the Debtor's failure to timely file and disclose the
information required in the Schedules and Statement of Financial Affairs or the Attorney Disclosure
Statement, all of which were due two weeks ago on March 3, 2011.

Payments or real estate taxes. When it became clear that the New Jersey Court was about to end the game, the Debtor filed its petition.

9.     From what little the Debtor has disclosed in its filings, there appears to be no chance for a reorganization and no reason for this case to linger in Chapter 11. The Debtor admits that it owes the Internal Revenue Service $1,400,000 an astonishing amount in that it appears the Debtor never made money and that the tax liability is, upon information and belief, for failure to pay withheld taxes. The Debtor appears to not have any customers other than their affiliates, it has not filed schedules nor sought an extension of time to do so, it may not have opened debtor in possession tax and operating bank accounts, it has not filed an order to allow it to use pre-petition bank accounts and apparently has not paid its equipment lessor for a longer period of time than it has not paid its affiliated landlord. In other words, even though the Debtor has not paid its two largest expenses for many months, it still appears not to have cash flow, and so "borrows" by not paying withholding taxes.

**B.     The Mortgaged Premises**

10.     The Leased Premises are the subject of a pre-petition first priority mortgage (the "Mortgage") which secures a loan from First American International Bank ("First Am"), made August 15, 2006 in the amount of $3.8 million.[2] (A true copy of the Mortgage is attached hereto as **Exhibit C**.) The Mortgage was subsequently assigned to DRA Asia, LLC.

11.     As further security for the Loan, 35 RELP executed an Assignment of Leases and Rents dated August 15, 2006 (the "Rent Assignment"), pursuant to which 35 RELP transferred its interest in any leases for the Leased Premises, along with any rents and income from the

---

[2] The respective loan documents were signed by Helmer Toro, on behalf of 35 RELP's general partner, Realholder Corporation. See Mortgage, signature page.

Leased Premises to First Am. (A true copy of the Rent Assignment is attached hereto as **Exhibit D**.) The Lease is scheduled as an exhibit to the Rent Assignment. Id.

12.     First Am subsequently transferred to DRA Asia, LLC all of its rights, title and interest to the Leased Premises, the Lease and the rental income stream therefrom, pursuant to an Assignment of Mortgage and Assignment of Assignment of Leases and Rents, both dated September 27, 2010.

**C.     Appointment of the Rent Receiver**

13.     On or about December 3, 2009, Robert Benjamin and DLC Services Corp., initiated a foreclosure action against 35 RELP, among others, in the New Jersey Court under Docket No. F-60204-09, captioned DLC Services Corp., _et al._ v. 35 Real Estate Limited Partnership, _et al_. This foreclosure action, upon information and belief, pertains to a certain second mortgage with respect to the Leased Premises, dated June 1, 2007, made by 35 RELP to DLC Services Corp. in the amount of $700,000.[3]

14.     On or about March 2, 2010, First Am initiated its own foreclosure action in the New Jersey Court, against 35 RELP with respect to the Mortgage under Docket No. F-7827-10 (the "First Am Action") for nonpayment of 35 RELP's obligations under the Mortgage beginning in June 2009. First Am asserted that as of the filing of the Complaint, 35 RELP owed $4,378,688.68, and sought to foreclose on the Leased Premises, as well as all subordinated liens (including the interest asserted in the aforementioned DLC Services Corp. matter).

15.     DRA Asia, LLC, as successor by assignment, has continued the First Am action since the Mortgage and the Rent Assignments were assigned by First Am. On April 19, 2010, First Am. recorded a lis pendens with respect to the Leased Premises.

---

[3] Upon information and belief, Mr. Benjamin is also a holder of third mortgage with respect to the Leased Premises believed to be recorded on July 23, 2009, in the amount of $500,000.

40000/0583-7442940v2

16.     On July 14, 2010, the New Jersey Court appointed the Rent Receiver solely with respect to the Leased Premises owned by non-debtor 35 RELP, pursuant to the New Jersey State Court *Order Appointing Limited Rent Receiver* (the "Receivership Order").[4]  (A true copy of the Receivership Order is attached hereto as **Exhibit E**.)

### D.     The Lease Terms

17.     Pursuant to the Lease, the Debtor is obligated to pay a monthly base rent in the amount of $43,166.67 per month (the "Rental Payments"), plus all other charges and amounts due under the Lease without deduction or setoff.  See § 1 of the Lease; see also Schedule A to the Rent Assignment.  Among the additional charges included as "Additional Rent" are all water charges, all taxes, assessments, water and sewer rents, public utility charges and other similar fees.  See § 1-3 of the Rider to the Lease.  The Lease expressly provides that all payments are due on the first of every month, without necessity of demand.  See § 1 of the Lease.[5]

18.     The Lease provides for several remedies when the Debtor is in default including a default for failure to timely remit monthly rent, including both base and additional rent. Specifically, the Lease provides:

> … if any default be made in the payment of the said rent or any part thereof, or if any default be made in the performance of any of the

---

[4] The Receivership Order was entered on July 14, 2010, in the matter of DLC Services Corp., *et al.* v. 35 Real Estate Limited Partnership, HUD-F-60242-09.

[5] The Order Fixing Rent was entered on January 4, 2011, and upon information and belief, the New Jersey Court in reciting the amount of rent due under the Lease, mistakenly stated that the 15th of each month was the due date for the rent.  Such confusion may have arisen because the term of the Lease is from the 15th of August 2006 until the 15th of August 2026, a term included in the same provision as the due date for Rental Payments.  Regardless, the Lease remains in full force and effect and accordingly, all Rental Payments and other payments due under the Lease are due, without demand or setoff, on the 1st of each month.  In any event, Mr. Toro testified on March 15, 2010 at a deposition in connection with the New Jersey Court for the summary judgment proceeding related to 35 RELP's nonpayment on the Mortgage, that the Rental Payments and other payments due under the Lease are due and payable on the 1st of every month.  To the extent the Court requires further proof of this issue, the Rent Receiver will endeavor to obtain a transcript from that hearing.

covenants herein contained, the Landlord or representatives may re-enter the said premises by force, summary proceedings or otherwise, and remove all persons, without being liable to prosecution therefore

\* \* \* \*

Tenant will pay the Rent without demand and notice and without abatement … and will similarly pay, as additional rent, all other payments or charges which Tenant in any of the provisions of this Lease assumes or agrees to pay, and in the event of any non-payment thereof, Landlord shall have (in addition to all other rights and remedies) all of the rights and remedies provided herein or by law in the case of non-payment of the Rent.

See § 8 of the Lease; § 2 of the Rider attached thereto.

**E.     The Debtor's Attempted Pre-Petition Modification of the Lease and the New Jersey Court Order Establishing Rental Payments Due to the Rent Receiver**

19.     Well after the foreclosures began, on or about June 25, 2010, the Debtor and 35 RELP purported to modify the Lease to decrease the Rental Payments from $43,166.67 per month to approximately $12,333 per month.

20.     Following the Debtor's remittance to the Rent Receiver of partial amounts of the Rental Payments due under the Lease, each only in the amount $6,166.67 for the months of August, September and November 2010, the Rent Receiver sought a determination by the New Jersey Court that the amendment was ineffective and that the monthly Rental Payments remained at $43,166.67 per month, rather than the $12,333 that the Debtor claimed was the modified monthly rent or the $6,166.67 the Debtor tried to pay.

21.     In the First Am Action, the New Jersey Court ultimately determined that the amendment of the Lease was ineffective and that the Rental Payments remained at $43,166.67 per month and that the Rental Payments, together with the payments of all other obligations under the Lease, must be remitted to the Rent Receiver, pursuant to the *Order (i) Substituting Party Plaintiff, (ii) Fixing Amount of Rent Due Tenant to Receiver; and (iii) Continuing Motion*

*Related to Lien Priority*, entered on January 4, 2011 (the "Order Fixing Rent") and the

subsequent *Order Determining Priority of Claims*, entered on February 23, 2011 (the "Order

Confirming Rent & Priority of Claims" and the Order Fixing Rent are collectively referred to as

the "State Court Orders").  (True copies of the State Court Orders are attached hereto as **Exhibit**

**F**.)  See Order Fixing Rent, ¶ 4-7.[6]  The New Jersey Court also formally addressed the arrearages

under the Lease, finding that as of January 4, 2011, the Debtor owed the Rent Receiver

$215,833.35 in past due Rental Payments under the Lease.  Id. at ¶ 4.

22.     Since the Rent Receiver's appointment, the Debtor has continually failed to

timely or fully remit the Rental Payments due under the Lease or the other payments required

thereunder.  Attached hereto as **Exhibit G** is a schedule of the payments received since the Rent

Receiver's appointment, which shows that the Debtor only made partial Rental Payments for

August, September and November, 2010, in an amount significantly less than the amount

required under the Lease, thus necessitating the Rent Receiver's application to the New Jersey

Court to fix the amount due under the Lease.

23.     Following the Debtor's continued failure to comply with the terms of the Order

Fixing Rent, the Rent Receiver sought to exercise his rights to evict the Debtor from the Leased

Premises and ultimately obtained a judgment for possession from the New Jersey Court.  On

February 16, 2011, the Rent Receiver requested the Clerk of the Special Civil Part of the New

Jersey Court issue a Warrant of Removal, however, the next day the Debtor filed its Petition with

this Court.

---

[6] Pursuant to the Order Confirming Rent & Priority of Claims, the New Jersey State Court also
found that DRA Asia, LLC's rights with respect to the Mortgage and amounts due thereunder were
superior to the subsequently asserted tax claims by the United States of America through the Internal
Revenue Service.  See Order Confirming Rent & Priority of Claims, ¶ 1.

**F.      Demand for Payment of Post-Petition Rent**

24.      On March 14, 2011, counsel to the Rent Receiver sent a letter to the Debtor's
counsel demanding payment of all then due post-petition obligations under the Lease pursuant to
the State Court Orders, including the post-petition Rental Payment and all other related payments
which were due March 1, 2011 (the "Arrears").  (A true copy of that letter is attached hereto as
**Exhibit H**).  The Letter also asserts the belief that Rental Payments and other payments are also
due for the period February 17, 2011 through February 24, 2011 (the "Stub-Period").  The Rent
Receiver requested that the Debtor advise of its position with respect to both post-petition
Arrears and Stub-Period rent and whether such payments would be forthcoming.

25.      Despite this demand, and the Rent Receiver's clear warning therein that the
failure to pay (or at a minimum, to acknowledge that payment would be forthcoming), the
Debtor has not yet responded to the demand to acknowledge its obligations nor has it paid any
portion of the now due post-petition Arrears under the Lease.

26.      Attached hereto as **Exhibit I** are invoices showing, as of the date hereof, the
Rental Payment and Taxes due post-petition and pursuant to the Debtor's obligations under the
Lease, totaling $59,995.17.

27.      Accordingly, the Rent Receiver was left with little choice but to request that the
Court enter an Order requiring the Debtor comply with its post-petition obligations under the
Lease pursuant to Sections 365(d)(3) that are currently due, directing the Debtor timely perform
all future obligations thereunder; and granting the Rent Receiver prospective relief from the
automatic stay in the event of the Debtor's continued non-payment to permit the Rent Receiver
to exercise all rights under that certain Lease.

40000/0583-7442940v2

## III.    RELIEF REQUESTED AND BASIS THEREFOR

**A.    The Court Should Compel the Debtor to Meet Its Post-Petition Obligations Under the Lease Pursuant to Section 365(d)(3).**

28.    The Debtor should be compelled, pursuant to section 365(d)(3) of the Bankruptcy Code, to: (a) pay immediately the outstanding Rental Payments and Taxes totaling $59,995.17 which became due post-petition; and (b) perform timely all future obligations under the Lease.

29.    Section 365(d)(3) of the Bankruptcy Code expressly provides that

> The <u>trustee shall timely perform all of the obligations</u> of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding 503(b)(1) of this title.[7]

11 U.S.C. § 365(d)(3) (emphasis added).

30.    Section 365(d)(3) of the Bankruptcy Code was adopted by Congress "to ameliorate the perceived inequities that lessors of nonresidential real property had faced during the period after a Chapter 11 filing but before assumption or rejection … [else] 'the landlord is forced to provide current services – the use of its property, utilities, security, and other services – without current payment …' " <u>In re Stone Barn Manhattan LLC</u>, 398 B.R. 359, 361 (Bankr. S.D.N.Y. 2008) (quoting Cong. Rec. S8894-05 (daily ed. June 29, 1984)); <u>see</u> <u>also</u> <u>The Caldor Corp. v. S Plaza Assocs., L.P. (In re Caldor, Inc. – NY)</u>, 217 B.R. 116, 120-21 (Bankr. S.D.N.Y. 1998).

31.    Courts in this Circuit have held that Section 365(d)(3) should be strictly construed and debtors should be required to pay the contract rate of rent within a lease in question and that such payments must be timely remitted. <u>See</u>, <u>e.g.</u>, <u>In re Pudgie's Dev. of NY, Inc.</u>, 202 B.R. 832,

---

[7] Section 503(b)(1) of the Code provides for the allowance of administrative expense claims for "the actual, necessary costs and expenses of preserving the estate…"

836 (Bankr. S.D.N.Y.).  Indeed, such protection and "preferred treatment" compared to other creditors is specifically afforded a landlord because, unlike other creditors, while the debtor's bankruptcy petition is pending, the landlord is *compelled* to involuntarily continue post-petition performance.  Id.

32.     Based on the express language of Section 365(d)(3), the Debtor, as a debtor-in-possession, who continues to occupy nonresidential real property must continue to meet its obligations under the Lease, including, without limitation, its obligation to timely remit the Rental Payments and all amounts due thereunder.

33.     The Debtor, however, despite the statutory mandate of Section 365(d)(3) of the Bankruptcy Code, has failed to meet any of its payment obligations under the Lease.  Although this Debtor only filed a petition for relief within the last month, the Rent Receiver has been forced to pursue the Debtor for almost a year despite the New Jersey Court's unequivocal mandates requiring the Debtor's compliance.  The Debtor should not be permitted to use certain protections of sections of chapter 11 of the Bankruptcy Code, while attempting to avoid the requirements of others.

34.     Accordingly, the Rent Receiver requests that the Court enter an Order compelling the Debtor to remit timely monthly Rental Payments and meet its other payment obligations under the Lease during the pendency of the Debtor's chapter 11 case, prior to the Debtor's assumption or rejection of the Lease.

**B.      Should the Debtor Default on its Lease Obligations Going Forward, the Rent Receiver Should be Allowed to Obtain Stay Relief on Short Notice to Terminate the Lease and Gain Possession of the Leased Premises**

35.     Given the Debtor's repeated pattern of non-payment of rent and other obligations under the Lease, as chronicled herein, the Rent Receiver should be allowed to terminate the Lease on two (2) business days' notice.

36.     Section 362(d)(1) of the Bankruptcy Code provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay…
>
> (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

37.     Neither the Bankruptcy Code nor the legislative history of Section 362(d)(1) define the phrase "cause" and, therefore, it is given application on a case by case basis. "Cause" for purposes of relief from the automatic stay under Bankruptcy Code Section 362(d) is a broad and flexible concept, and the facts relating to each request will determine whether relief is appropriate under the circumstances. See In re The Score Board, Inc., 238 B.R. 585, 598 (D.N.J. 1999); see also In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (bankruptcy court must decide what constitutes "cause" to lift the automatic stay on a case-by-case basis); In re Wilson, 85 B.R. 722, 728 (Bankr. E.D. Pa. 1988) (same). The determination of whether "cause" exists to vacate the automatic stay is committed to the sound discretion of the bankruptcy court. See In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990) (citing Holtkamp v. Littlefield (In re Holtkamp), 669 F.2d 505, 507 (7th Cir. 1982); In re Milstein, 304 B.R. 208, 211 (Bankr. E.D. Pa. 2004) (citations omitted). In making this determination, courts must consider "the interests of the debtor, the claimant and the estate." In re MacInnis, 235 B.R. 255, 259 (Bankr. S.D.N.Y. 1998).

38.     It is well-settled that a debtor in bankruptcy has "no greater rights or powers under a contract than the debtor would have outside of bankruptcy." Valley Forge Plaza Assoc. v. Schwartz (In re Valley Forge Plaza Assoc.), 114 B.R. 60, 62 (E.D. Pa. 1990) (citing In re Heaven Sent Ltd. v. Commercial Union Ins. Co., 37 B.R. 597, 597-98 (Bankr. E.D. Pa. 1984); In

12

re PSA, Inc., 335 B.R. 580, 588 (Bankr. D. Del. 2005) (finding it "clear that the filing of a bankruptcy petition does not permit a debtor in possession to enjoy greater contract or property rights than it possessed outside of bankruptcy case") (citing In re Island Helicopters, Inc., 211 B.R. 453, 464 (Bankr. E.D.N.Y. 1997) ("The filing of a bankruptcy petition does not expand the debtor's rights against others more than they exist at the commencement of the case")) (additional citations omitted). Therefore, the ability to terminate a contract on its terms survives bankruptcy. Valley Forge, 114 B.R. at 62; Shell Oil Co. v. Anne Cara Oil Co., Inc. (In re Anne Cara Oil Co., Inc.), 32 B.R. 643, 647 (Bankr. D. Mass. 1983) ("The general rule is…if the [non-debtor] party had a right to terminate the arrangement, that right survives adoption of the contract by the trustee…[T]he right to terminate a contract pursuant to its terms survives the bankruptcy of other contracting party") (quoting Thompson v. Texas Mexican Railway Co., 328 U.S. 134, 141-42 (1946)).

39. Numerous courts have granted relief from the automatic stay to permit a non-debtor party to terminate an executory contract for cause. See In re M.J. & K Co., Inc., 161 B.R. 586 (Bankr. S.D.N.Y. 1993) (law school granted relief from automatic stay to serve notice and terminate license in real property with Chapter 11 bookstore owner that was terminable at will); In re Tudor Motor Lodge Assoc., Ltd. P'ship., 102 B.R. 936 (Bankr. D.N.J. 1989) (permitting termination of license agreement for having materially breached the license agreement and not providing adequate protection); Sementelli v. Stagedoor, Inc. (In re Stagedoor, Inc.), 32 B.R. 13, 14 (Bankr. W.D. Pa. 1983) (non-debtor party granted relief from the automatic stay to terminate unexpired lease where the debtor exhibited a continuous history of default on monthly payments and cancellation of insurance). For example, in Tudor Motor Lodge, Days Inn of America Franchising, Inc. ("DIAF") moved for relief from the automatic stay to terminate a license

agreement with Tudor Motor Lodge Associates ("Tudor"). Pursuant to the license agreement, Tudor was required, among other things, to complete its construction obligations in accordance with the agreement or DIAF could, in its sole discretion, terminate the agreement. Tudor did not perform the construction work agreed upon and failed to meet other obligations to bring the premises into compliance with DIAF's standards. The court held that those defaults constituted material breaches of the license agreement and diminished the value of DIAF's reputation. Accordingly, the court determined that Tudor failed to adequately protect DIAF's interest and granted DIAF relief from the automatic stay to terminate the license agreement.

40. Similarly, here, any future post-petition breach of the Lease that goes uncured would constitute "cause" under Section 362(d)(1) of the Bankruptcy Code to vacate the automatic stay and permit the Rent Receiver to terminate the Lease. As set forth above, the Debtor has a long and tortured history of not paying rent and other obligations under the Lease. The Rent Receiver should not be held hostage in the event the Debtor defaults under the Lease.

41. The Lease specifically provides the landlord thereunder, and the Rent Receiver pursuant to the State Court Orders, with the right to "re-enter the said premises by force, summary proceedings or otherwise, and remove all persons, without being liable to prosecution therefore." See § 2 of the Rider to the Lease.

42. In the event the Debtor fails to comply with the Lease terms going forward, the Rent Receiver shall provide the Debtor with two (2) days-notice that it will proceed with terminating the Lease due to non-payment and non-compliance with this Court's Order. The Rent Receiver should provide the Court with a Certification that the required two (2)-days notice was supplied. To the extent the Debtor contests same, it would have to seek relief from the Court to reimposed the automatic stay. Under the circumstances, where the Debtor has

14

continuously failed to satisfy its obligations under the Lease, the Rent Receiver should not have to incur additional legal fees and delays to enforce its rights under the Lease.

## IV.    RESERVATION OF RIGHTS

43.     The Rent Receiver reserves all rights with respect to that portion of Arrears attributable to the Stub Period.

WHEREFORE, the Rent Receiver respectfully requests that the Court enter an Order granting the Motion and such other relief as the Court deems just and appropriate under the circumstances.

DATED:  New York, New York   Respectfully submitted,
    March 17, 2011

           COLE, SCHOTZ, MEISEL,
           FORMAN & LEONARD, P.A.
           A Professional Corporation
           *Attorneys for Raymond E. Bulin, Rent Receiver*
           *Appointed by the Superior Court of New Jersey,*
           *Hudson Vicinage, for the Mortgaged Property*
           *Owned By 35 Real Estate Limited Partnership*


           By:___*/s/ Leo V. Leyva*_____
            Leo V. Leyva
            Jill B. Bienstock
            900 Third Avenue, 16th Floor
            New York, NY 10022
            Telephone (212) 752-8000
            Facsimile (212) 752-8393
            E-mail: lleyva@coleschotz.com
            E-mail: jbienstock@coleschotz.com

40000/0583-7442940v2