**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
900 Third Avenue, 16th Floor
New York, New York 10022
Telephone (212) 752-8000
Facsimile (212) 752-8393
Leo V. Leyva, Esq.
Jill B. Bienstock, Esq.
*Attorneys for Raymond E. Bulin, Rent Receiver Appointed by the*
*Superior Court of New Jersey, Hudson Vicinage, for the Mortgaged*
*Property Owned By 35 Real Estate Limited Partnership*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| 35 REAL ESTATE LIMITED | : | Case No. 11-11489(SHL) |
| PARTNERSHIP, | : | |
| | : | |
| Debtor. | : | |
| | : | |
| In re: | : | |
| | : | Chapter 11 |
| GARDEN OPERATION REALTY | : | |
| LIMITED PARTNERSHIP, | : | Case No. 11-10668 (SHL) |
| | : | |
| Debtor. | : | |
| | : | |

**EXPEDITED MOTION OF RAYMOND E. BULIN, THE RENT RECEIVER APPOINTED BY THE SUPERIOR COURT OF NEW JERSEY, FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 543(d) and 362(d)(1): (I) EXCUSING RENT RECEIVER FROM COMPLIANCE WITH 11 U.S.C. § 543(a) AND (b); AND (II) VACATING THE AUTOMATIC STAY IN DEBTOR-GARDEN OPERATION REALTY LIMITED PARTNERSHIP'S CASE TO PERMIT THE RENT RECEIVER TO EXERCISE ALL <u>HIS RIGHTS AND REMEDIES WITH RESPECT TO THE LEASED PREMISES</u>**

Raymond E. Bulin, the Rent Receiver (the "<u>Rent Receiver</u>") appointed by the Superior

Court of New Jersey, Hudson Vicinage (the "<u>New Jersey Court</u>"), for the mortgaged property

owned by debtor 35 Real Estate Limited Partnership ("<u>35 RELP</u>") and occupied by debtor

Garden Operation Realty Limited Partnership ("Garden" and together with 35 RELP, collectively, the "Debtors"), by and through his undersigned counsel, hereby files a motion (the "Motion"), pursuant to 11 U.S.C. §§ 543(d) and 362(d)(1) for an order, in substantially the same form as the proposed Order attached hereto as **Exhibit A**, to: (i) excuse compliance with 11 U.S.C. § 543(a) and (b); and (ii) vacate the automatic stay to permit the Rent Receiver to exercise all his applicable rights and remedies for Garden's continued nonpayment of rent for the leased premises located at 35 UPS Drive, Secaucus, New Jersey 07094 (the "Leased Premises").[1] The Rent Receiver respectfully represents:

## I.    JURISDICTION

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E) and (G).

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II.    BACKGROUND

### A.    Introduction

3.    As this Court is now well aware, over the past many years the Debtors, both of whom are under the sole control of Helmer Toro, have played their version of a shell game, with the objective of maintaining control over the premises without paying any debt service, Rental Payments (defined herein) or real estate taxes.  When it became clear that the New Jersey Court was about to end the game, Garden filed its chapter 11 petition.  When it became clear that this Court was about to end Mr. Toro's shell game, 35 RELP filed its own petition to, upon information and belief, forestall this Court's Order requiring Garden to pay post-petition rent to

---

[1] At present, there are three related entities with cases pending before this Court.  None of the debtors, however, have yet sought to jointly administer the estates.  Accordingly, this Motion is being filed in each of the Debtors' cases as the relief sought herein affects both estates.

49060/0001-7499638v2

the Rent Receiver and to effectively remove the Rent Receiver, enabling 35 RELP to "collect" the rents due from Garden.[2]

4.  Notwithstanding this Court's express Order entered on March 28, 2011, requiring Garden to meet its post-petition obligations under that certain Lease (defined herein), including payment to the Rent Receiver of $61,666.67 for post-petition rent (the "Post-Petition Rent") by Friday, April 1, 2011, Garden has continued its pattern of pre-petition non-compliance with court-directives and, as of the date hereof, still has not paid the Post-Petition Rent either to 35 RELP or the Rent Receiver. The Rent Receiver's attempts to verify whether Garden paid the Post-Petition Rent due under the Court's Order, even if to 35 RELP, have been met with deafening silence from each of the Debtor's respective counsel.[3]

5.  Given the Rent Receiver's appointment by the New Jersey Court and cognizant of the implications of 11 U.S.C. § 543(a) and (b) on the Rent Receiver's powers to collect rent due from Garden, the Rent Receiver is filing this Motion seeking to excuse compliance with requirements that the Rent Receiver turnover "property" of 35 RELP, including any rents ultimately collected or previously collected from Garden, to 35 RELP, subject to further Order of this Court.

6.  Pursuant to its petition, 35 RELP is a single-asset real estate entity with no business or income except to own the Leased Premises.[4] Moreover, 35 RELP, like Garden, is

---

[2] As discussed further herein, all rights, title and interest in the rents received from Garden for the Leased Premises were assigned by 35 RELP to its mortgagee by an absolute assignment.

[3] The letter was sent directly to counsel for each of the above-captioned Debtors, among other parties, filed with the Court via ECF and sent directly to the chambers of the Honorable Sean H. Lane [Docket No. 30, Case No. 11-10668; Docket No. 5, Case No. 11-11489).

[4] The front of 35 RELP's petition expressly provides that 35 RELP's business is that of a "Single Asset Real Estate as defined by 11 U.S.C. § 101(51B)." See Docket No. 1, Case No. 11-11489.

49060/0001-7499638v2

subject to the gross-mismanagement by Helmer Toro.  The best interests of the creditors are served by the continued receivership of 35 RELP pursuant to the New Jersey Court orders and subject to this Court's supervision.

7.       From what little Garden and 35 RELP have disclosed in their filings, there appears to be no chance for a reorganization.  Indeed, this Court even recognized the difficulties presented by Garden's case when it expressly authorized the Rent Receiver to seek relief from the automatic stay on shortened notice in the event of Garden's anticipated failure to pay the Post-Petition Rent.  In accordance with the Court's previous authorization, and in connection with the Rent Receiver's request to excuse compliance with section 543 of title 11 of the United States Code (the "Bankruptcy Code"), the Rent Receiver now also seeks to terminate the automatic stay with respect to Garden's tenancy in the Leased Premises.  As detailed herein, ample cause exists to warrant the termination of the automatic stay to allow the Rent Receiver to exercise all his rights and remedies given Garden's continued failure to remit the Post-Petition Rent (and indeed, the pre-petition Rental Payments (defined herein)).  Absent the relief requested in this Motion, the Debtors will continue to flout the requirements of the Bankruptcy Code, eviscerating the protections expressly afforded to the parties by Congress.

**B.       The Mortgaged Premises**

8.       The Leased Premises are the subject of a pre-petition first priority mortgage (the "Mortgage") which secures a loan from First American International Bank ("First Am"), made on August 15, 2006 in the amount of $3.8 million.[5]  (A true copy of the Mortgage Note and

---

[5] The respective loan documents were signed by Helmer Toro, on behalf of 35 RELP's general partner, Realholder Corporation.  See Mortgage, signature page.

Mortgage are attached hereto as **Exhibit B**.)  The Mortgage and Mortgage Note were subsequently assigned to DRA Asia, LLC ("<u>DRA Asia</u>").

9.	As further security for the Loan, 35 RELP executed a pre-petition Assignment of Leases and Rents, dated August 15, 2006 (the "<u>Rent Assignment</u>"), pursuant to which 35 RELP transferred to First Am all of its interest in any leases for the Leased Premises, along with any rents and income from the Leased Premises.  (A true copy of the Rent Assignment is attached hereto as **Exhibit C**.)  The Lease is scheduled as an exhibit to the Rent Assignment.  <u>Id.</u>

10.	First Am subsequently transferred to DRA Asia all of its rights, title and interest to the Leased Premises, the Lease and the rental income stream therefrom, pursuant to an Assignment of Mortgage and Assignment of Assignment of Leases and Rents, both dated September 27, 2010.

**C.	The Lease**

11.	Debtor Garden is a tenant of the Leased Premises, owned by debtor 35 RELP, pursuant to a Lease Agreement dated August 15, 2006, by and between 35 RELP, as landlord, and Garden, as tenant (the "<u>Lease</u>").  (A true copy of the Lease is attached hereto as **Exhibit D**.)

12.	Garden and the landlord, 35 RELP, are related parties, each formed with similar structures, having been owned largely, upon information in belief, by limited partner Dr. Amy Toro, and controlled by a general partner corporation that is owned and controlled by her husband, Helmer Toro.

13.	Pursuant to the Lease, Garden is obligated to pay a monthly base rent in the amount of $43,166.67 per month (the "<u>Rental Payments</u>"), plus all other charges and amounts

49060/0001-7499638v2

due under the Lease without deduction or setoff.  <u>See</u> § 1 of the Lease.[6]  Among the additional

charges included as "Additional Rent" are all water charges, all taxes, assessments, water and

sewer rents, public utility charges and other similar fees.  <u>See</u> § 1-3 of the Rider to the Lease.

The Lease expressly provides that all payments are due on the first of every month, without

necessity of demand.  <u>See</u> § 1 of the Lease.

      14.     The Lease provides for several remedies when Garden is in default including a

default for failure to timely remit monthly rent, including both base and additional rent.

Specifically, the Lease provides:

> … if any default be made in the payment of the said rent or any part
> thereof, or if any default be made in the performance of any of the
> covenants herein contained, the Landlord or representatives may re-
> enter the said premises by force, summary proceedings or otherwise,
> and remove all persons, without being liable to prosecution therefore
>
>           *      *      *      *
>
> Tenant will pay the Rent without demand and notice and without
> abatement … and will similarly pay, as additional rent, all other
> payments or charges which Tenant in any of the provisions of this

---

[6] As this Court is well aware, pre-petition, Garden and 35 RELP through Helmer Toro, attempted to unilaterally modify the Lease to reduce the monthly Rental Payments from $43,166.67 to a mere $12,333, although Garden only remitted $6,166.67 of the $12,333 "reduced monthly rent."  The Rent Receiver obtained a determination from the New Jersey Court that the attempted amendment of the Lease was ineffective and that the Rental Payments remained at $43,166.67 per month.  A copy of that *Order (i) Substituting Party Plaintiff, (ii) Fixing Amount of Rent Due Tenant to Receiver; and (iii) Continuing Motion Related to Lien Priority*, entered on January 4, 2011 (the "<u>Order</u> <u>Fixing</u> <u>Rent</u>") is attached hereto as **Exhibit E**.

Garden incorrectly stated at the Section 341 meeting of its creditors that the rent due under the Lease was the reduced amount pursuant to the amendment, as if the New Jersey Court Order Fixing Rent was never entered.  For avoidance of doubt, however, the Order Fixing Rent has conclusively established
(i) the ineffectiveness of the amendment, (ii) the amount of monthly rent due (which this Court has also concurred with in the Order to Compel, <u>see</u> <u>infra</u>); and (iii) that DRA Asia's rights with respect to the Mortgage and amounts due thereunder were superior to the subsequently asserted tax claims by the United States of America through the Internal Revenue Service.  <u>See</u> Exhibit E hereto, Order Fixing Rent; <u>see</u> <u>also</u> Exhibit E to the Motion to Compel [Docket No. 15], additional Order establishing priority of claims.

49060/0001-7499638v2

Lease assumes or agrees to pay, and in the event of any non-payment thereof, Landlord shall have (in addition to all other rights and remedies) all of the rights and remedies provided herein or by law in the case of non-payment of the Rent.

<u>See</u> § 8 of the Lease; § 2 of the Rider attached thereto.

**D.     Appointment of the Rent Receiver & Debtors' Continued Defaults**

15.     On or about December 3, 2009, Robert Benjamin and DLC Services Corp., initiated a foreclosure action against 35 RELP, among others, in the New Jersey Court under Docket No. F-60204-09, captioned <u>DLC Services Corp., *et al.* v. 35 Real Estate Limited Partnership, *et al*</u>.  This foreclosure action, upon information and belief, pertains to a certain second mortgage with respect to the Leased Premises, dated June 1, 2007, made by 35 RELP to DLC Services Corp. in the amount of $700,000.[7]

16.     On or about March 2, 2010, First Am initiated its own foreclosure action in the New Jersey Court, against 35 RELP with respect to the Mortgage under Docket No. F-7827-10 (the "<u>First Am Action</u>") for 35 RELP's continued failure to meet its obligations under the Mortgage beginning in June 2009.  First Am asserted that as of the filing of the complaint, 35 RELP owed $4,378,688.68, and sought to foreclose on the Leased Premises, as well as all subordinated liens (including the interest asserted in the aforementioned <u>DLC Services Corp.</u> matter).  A true copy of the complaint, without exhibits, is attached hereto as **Exhibit F**.

17.     DRA Asia, as successor by assignment, has continued the First Am Action since the Mortgage and the Rent Assignment were assigned by First Am.  On April 19, 2010, First Am. recorded a *lis pendens* with respect to the Leased Premises.

---

[7] Upon information and belief, Mr. Benjamin is also a holder of third mortgage with respect to the Leased Premises believed to be recorded on July 23, 2009, in the amount of $500,000.

18.    On July 14, 2010, the New Jersey Court appointed the Rent Receiver with respect to the Leased Premises owned by 35 RELP, pursuant to the New Jersey Court *Order Appointing Limited Rent Receiver* (the "Receivership Order").[8] (A true copy of the Receivership Order is attached hereto as **Exhibit G**.). The Rent Receiver was appointed to, among other things, collect and enforce 35 RELP's rights under the Lease. Indeed, before Garden filed its petition, the New Jersey Court entered an order finding that the total unpaid pre-petition rent under the Lease, as of January 4, 2011, totaled $215,833.35. See Exhibit E, Order Fixing Rent.

19.    Following Garden's continued failure to comply with the terms of the Order Fixing Rent, the Rent Receiver sought to exercise his rights to evict Garden from the Leased Premises and ultimately obtained a judgment for possession from the New Jersey Court. On February 16, 2011, the Rent Receiver requested the Clerk of the Special Civil Part of the New Jersey Court issue a Warrant of Removal.

**E.    Garden's Chapter 11 Case**

20.    One day after the Rent Receiver obtained a judgment of possession and the right to evict Garden due to non-payment of pre-petition rent, Garden filed its voluntary petition on February 17, 2011. Garden's affidavit submitted in support of its petition acknowledged that it sought protection of this Court only to frustrate the Rent Receiver's intention to evict Garden in favor of a paying tenant. See Affidavit accompanying Garden's petition, ¶ 13.

21.    Garden failed to file the Schedules and Statement of Financial Affairs by the required deadline of March 3, 2011. Instead, Garden first filed its initial Schedules and

---

[8] The Receivership Order was entered on July 14, 2010, in the matter of DLC Services Corp., *et al.* v. 35 Real Estate Limited Partnership, HUD-F-60242-09.

49060/0001-7499638v2

Statement of Financial Affairs on March 18, 2011, more than two weeks late; these materials, however, are incomplete as further explained herein.

(i)      **The Rent Receiver's Motion to Compel**

22.      Because of extensive history of nonpayment, and the Rent Receiver's unmet demand for payment of post-petition rent, the Rent Receiver moved for the enforcement of his statutory rights under 11 U.S.C. § 365(d)(3). On March 17, 2011, the Rent Receiver filed the *Expedited Motion of Raymond F. Bulin, the Rent Receiver Appointed by the Superior Court of New Jersey, for an Order Pursuant to 11 U.S.C. Sections 365(d)(3) and 362(d): (1) Compelling Immediate Payment of Post-Petition Lease Obligations Under the Non-Residential Real Property Lease and Directing the Debtor Timely Perform All Future Obligations Thereunder; and (II) Granting the Rent Receiver Prospective Relief from the Automatic Stay in the Event of Non-Payment* [Docket No. 15] (the "Motion to Compel").

23.      On March 25, 2011, Garden filed an objection to the Motion to Compel asserting as its sole basis for opposition, that Garden had signed a letter of intent with a potential investor, though Garden failed to provide any concrete or reliable evidence of its intent or ability to satisfy its obligations under the Lease.

24.      On March 28, 2011, the Court conducted a hearing on the Motion to Compel and granted in part the Rent Receiver's Motion to Compel, entering an Order [Docket No. 29] (the "Order to Compel"), requiring Garden to pay to the Rent Receiver the Post-Petition Rent.

25.      The Order to Compel further required Garden timely perform its obligations under the Lease until such time as Garden assumed or rejected the Lease and in the event of non-payment of rent, the Court expressly held that the Rent Receiver may, as early as April 1, 2011, file a motion on shortened notice seeking, among other relief, to vacate the automatic stay to

9

allow the Rent Receiver to exercise all his applicable New Jersey State rights and remedies with respect to the Leased Premises for Garden's non-payment of rent.

### (ii)    The 341 Meeting of Creditors

26.    The Section 341 meeting of Garden's creditors was conducted by the Office of the United States Trustee for the Southern District of New York (the "UST") on March 25, 2011, though it has not yet been concluded.  During the meeting, which was well attended by representatives of the Internal Revenue Service and the Attorney General's Office, Garden represented that it would be filing amended Schedules and Statement of Financial Affairs to reflect its numerous intercompany relationships and transfers of money and property, to and from other related entities; to date, however, Garden has still not filed amended Schedules or Statement of Financial Affairs to accurately reflect Garden's obligations and assets.[9]

27.    As the Court is aware, and as the UST observed at the Section 341 meeting, Garden has still not filed its initial monthly operating report (generally, the "MOR") in compliance with the UST Guidelines for Chapter 11 Cases.  In addition to having to file the MOR, and in view of the significant tax debts listed on Garden's Schedules and the prior history of issues with taxing authorities and Mr. Helmer, the UST is now requiring Garden file, on a monthly basis, a signed affidavit attesting that Garden is current with its tax obligations.

---

[9] In addition to the Debtors' cases, one additional entity to date has also filed for bankruptcy protection. On March 21, 2011, First Toro Family Limited Partnership ("First Toro") filed a voluntary petition for chapter 11 relief.  The materials filed in support of First Toro's bankruptcy petition, however, appear hastily drafted and incomplete as they lacked: (i) the affidavit required under the Local Rule 1007-2; (ii) a complete list of creditors; and (iii) corporate resolution authorizing filing of the bankruptcy petition, all of which were due at the time of filing the petition.  The remaining items due by April 4, 2011, but as of yet still not filed include: (i) disclosure of compensation to attorney and (ii) a list of all equity holders.  On April 5, 2011, First Toro filed certain Schedules, Amended Schedules and a Statement of Financial Affairs (the "SOFA").  The SOFA, which fails to report the income for calendar year 2010, reveals an alleged payment of $49,440 to Garden in the 90 days before First Toro's filing, however no payments from such monies were ever remitted to the Rent Receiver.

28.     As of the date hereof, however, Garden has still not filed its MOR or affidavit. Nor was Garden able to confirm at the 341 meeting whether it is operating at a profit, either pre-petition or post-petition, though Garden has confirmed that it still has not paid any of its post-petition obligations, including the Post-Petition Rent due to the Receiver under the Court's Order to Compel.

**F.     35 RELP's Chapter 11 Case**

29.     On March 31, 2011, 35 RELP filed a hastily compiled voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, including a representation that 35 RELP is a "Single Asset Real Estate as defined by 11 U.S.C. § 101(51B)." <u>See</u> Docket No. 1, Case No. 11-11489.

30.     Counsel to the Rent Receiver received notice of 35 RELP's filing by a letter received on April 1, 2011, from the general counsel of First Toro and the other businesses run by Mr. Toro.

31.     As stated herein, the filing was clearly an attempt to forestall the Court's Order to Compel with respect to the Post-Petition Rent. The papers are incomplete and still lack materials required as of the filing date, including: (i) a complete list of creditors; (ii) a corporate resolution for authority to file; (iii) a corporate ownership statement and (iv) an affidavit pursuant to Local Rule 1007-2. The balance of the materials, including complete Schedules, a Statement of Financial Affairs, disclosure of attorney compensation and list of equity security holders, are due by April 14, 2011.

**G.     The Debtors' Lack of Prospects for Reorganization**

32.     To date, the Debtors have failed to even meet the bare minimum requirements imposed upon chapter 11 debtors in this District. Specifically, Garden's failure to timely file its MOR, to remain current with its tax obligations or its post-petition obligations are troublesome

49060/0001-7499638v2

and problematic. Garden's failure to file the MOR, however, is perhaps even more disconcerting because Garden and Mr. Toro have essentially had almost two months of unfettered use of funds, without oversight of this Court or the UST, all the while enjoying the protections afforded debtors under the Bankruptcy Code.[10]

33.     While 35 RELP is a newly filed case, it is unlikely that its bankruptcy will be conducted any differently than that of its affiliates, Garden and First Toro.

34.     Without setting forth the required information as of the filing dates, or in the Schedules, Statement of Financial Affairs or MOR, the Debtors are vitiating the transparency aims of the Bankruptcy Code. Accordingly, the Debtors should be precluded from further using this Court and the Bankruptcy Code to avoid and delay their legitimate creditors.

## III.     RELIEF REQUESTED AND BASIS THEREFOR

### The Court Should Excuse § 543 Compliance And Vacate The Automatic Stay

**A.     The Court Should Excuse the Rent Receiver's Compliance with 11 U.S.C. § 543(a) and (b) and Allow the Rent Receiver to: (i) Remain in Possession of Any Pre-Petition Rents or Income Derived from the Leased Premises; and (ii) Going Forward, Continue to Receive all Post-Petition Rents or Income Derived from the Leased Premises**

35.     Pursuant to Section 543(d)(1) of the Bankruptcy Code, the Court should excuse the Rent Receiver from having to comply with any requirements to release to 35 RELP or its estate any rent or other property within the Rent Receiver's control.[11]

---

[10] The true nature of Garden's unsecured creditor pool, excluding insiders or affiliated entities, remains unclear. Garden's Schedules and Statement of Financial Affairs reflect a debt due to Dr. Amy Toro, Mr. Toro's wife and significant payments to what are believed to be insiders, including $262,274.26 to Jersey Emplyees[sic] and $11,541.81 to Dr. Toro. The payment to Jersey Emplyees[sic], however, is not listed as an insider transfer although arguably it should be given that it is, upon information and belief, an affiliate of Garden

[11] The rents derived from the Leased Premises are arguably not even "property" of 35 RELP's estate due to the Rent Assignment, which, like the Mortgage is controlled by New York State Law. Where, as here, language in the Mortgage and Rent Assignment indicates that the assignment of rents is **absolute**, the (footnote continued on next page)

36.     Sections 543(a) and (b) of the Bankruptcy Code (the "Turnover Provisions") require a "custodian" to turn over to the bankruptcy trustee or debtor-in-possession any property of the debtor that is in the possession, custody or control of the custodian.  11 U.S.C. § 543(a) and (b); Dill v. Dime Sav. Bank, FSB (In re Dill), 163 B.R. 221, 225 (E.D.N.Y. 1994).  The definition of "custodian" includes a state court-appointed receiver.  11 U.S.C. § 101(11).

37.     Section 543(d)(1) of the Bankruptcy Code, however, provides that the bankruptcy court may, in its discretion, excuse a custodian's compliance with the Turnover Provisions "if the interests of creditors … would be better served by permitting a custodian to continue in possession … of such property."  11 U.S.C. § 543(d)(1); Dill, 163 B.R. at 225.  Section 543(d)(1) of the Bankruptcy Code has been interpreted to be a modified abstention provision akin to the Bankruptcy Code's general abstention provisions under Section 305.  Dill, 163 B.R. at 225.  Section 543(d)(2) of the Bankruptcy Code also provides for a bankruptcy court to excuse

---

(footnote continued from previous page)

Court may find that the assignment is as the parties intended and not a mere security interest.  See, e.g., In re Loco Realty Corp., 2009 WL 2883050 (Bankr. S.D.N.Y. June 25, 2009), Case No. 09-11785(ALG).  This Court has recently held though that the question of whether a debtor's assignment of rents to a mortgagee is "absolute" need not be resolved where, as here, a mortgagee took steps to enforce its interest, like seeking to appoint a receiver.  See In re SOHO 25 Retail, LLC, (Bankr. S.D.N.Y. Mar. 31, 2011) Case No. 11-1286(SHL) ("the Court does not need to resolve this murky legal question because the Lender here took sufficient affirmative steps to make the Assignment effective under New York Law.").

Under New York Law, the pre-petition appointment of the Rent Receiver perfected DRA Asia's ownership interest in the assigned rents to the extent not considered absolute and immediately vesting in DRA Asia upon execution of the Rent Assignment.  See In re SOHO, supra; In re Pine Lake Vill. Apt. Co., 17 B.R. 829, 833 (Bankr. S.D.N.Y. 1982) ("an assignment of rents clause in a mortgage is not self-executing and operates merely as a pledge of the rents, to which the pledge does not become entitled until he asserts his rights by taking affirmative steps, such as the appointment of a receiver to collect the rents for the benefit of the mortgagee, or obtaining an order for sequestration of the rents.") (citing Sullivan v. Rossan, 223 N.Y. 217 (1918); In re Hines, 88 F.2d 423 (2d Cir. 1937); In re Brose, 254 F3d. 664 (2d. Cir. 1918)).  While a finding by this Court that the rents due from Garden are not property of 35 RELP's estate might obviate any obligation for the Rent Receiver to turnover the rental funds to 35 RELP, for avoidance of doubt, the Rent Receiver nonetheless requests this Court excuse his compliance with any requirements to turnover property to 35 RELP and allow the Rent Receiver to continue collecting Post-Petition Rent, for cause.

a custodian's compliance with the Turnover Provisions where such custodian was appointed more than 120 days before the filing of a petition, "unless compliance with the [Turnover Provisions] … is necessary to prevent fraud or injustice."  11 U.S.C. § 543(d)(2).

38.     Critically, the debtor's interests **are** **not** relevant in a determination of whether to except a custodian from the Turnover Provisions.  See French Bourekas, Inc. v. Turner, 199 B.R. 807, 819 (E.D.N.Y. 1996); Dill, 163 B.R. at 224 ("[t]he interests of the Debtor, however, are not part of the criteria considered when applying section 543(d)(1)") (citing 4 Collier on Bankruptcy, ¶ 543.05 at 543-12 (15th Ed. 1993)); In re Foundry of Barrington Partnership, 129 B.R. 550, 558 (Bankr. N.D. Ill. 1991) ("… § 543(d) does not require or permit consideration of the interest of the debtor").

39.     Rather, courts considering whether to excuse a receiver from the Turnover Provisions under Section 543(d)(1) have looked to several factors to decide whether the interests of creditors would be better served by the continuation of the receiver.  Those factors include the following:

> (1) whether there will be sufficient income to fund a successful reorganization;
>
> (2) whether the debtor will use the property in question for the benefit of the creditors;
>
> (3) whether there has been mismanagement by the debtor;
>
> (4) whether or not there are avoidance issues raised with respect to the property (because the receiver does not possess avoiding powers for the benefit of the estate); and
>
> (5) the fact that the automatic stay had deactivated state court receivership action.

Dill, 163 B.R. at 225; In re Constable Plaza Assocs., L.P., 125 B.R. 98, 103-104 (Bankr. S.D.N.Y. 1991); In re CCN Realty Corp., 19 B.R. 526, 528-29(Bankr. S.D.N.Y. 1982).

49060/0001-7499638v2

Courts also consider the quality of the receiver's performance in deciding Section 543(d)(1) motions.  In re KCC-Fund v. Ltd., 96 B.R. 237, 240 (Bankr. W.D. Mo. 1980); see also In re Sundance Corp., 83 B.R. 746, 749 (Bankr. Mont. 1988) (continuing receiver who court found "ably performed his duties").

40.     Not all factors need to be present for a receiver to be excused from the Turnover Provisions pursuant to Section 543(d)(1).  See In re Lizeric Realty, 188 B.R. 499 (Bankr. S.D.N.Y. 1995).  Indeed, even where mismanagement is not conclusively shown, a court may nonetheless excuse a pre-petition appointed receiver or custodian from complying with the Turnover Provisions if it is in the best interests of the creditors.  See, e.g., In re LCL Income Properties, L.P. VI, 177 B.R. 872 (Bankr. S.D. Ohio 1995).  Courts have also found bases to continue a receivership where a single asset real estate entity lacks any incentive to collect rents from a related entity-tenant.  See, e.g., CCN Realty, 19 B.R. at 528-29 ("the debtor has no incentive to collect rents from the adult home … on its premises … operated by its sole shareholder.  Indeed, even after the debtor was directed by a state court to collect rents from the adult home, it failed to do so.").

41.     Application of the relevant factors support excusing the Receiver from the Turnover Provisions.  Here, the Rent Receiver has been in place for almost nine months.  As Mr. Toro and debtor Garden have already represented to this Court, Garden is unable to pay its post-petition obligations including the Post-Petition Rent.  The Post-Petition Rent, to the extent it was not already assigned and perfected by DRA Asia, would have been the only income that debtor 35 RELP could rely upon to fund a successful reorganization.  Accordingly, 35 RELP lacks any income stream, much less a sufficient one, to fund its reorganization.

49060/0001-7499638v2

42.     35 RELP and Garden have been grossly mismanaged at the hands of Mr. Toro,

both pre-petition and post-petition.  Pre-petition, under Mr. Helmer's direction and control,

neither of the Debtors met their respective obligations under the Mortgage or the Lease.  Indeed,

since 2009, debtor 35 RELP has been in default on its obligations with respect to the Mortgage

and even after the appointment of the Rent Receiver, debtor Garden, under the direction of Mr.

Toro, failed to remit a full month's rent.  The failure to remain current on mortgage obligations

and failure to pay taxes is evidence of mismanagement.  See Lizeric, 188 B.R. at 507.  The

Debtors and Mr. Toro have already represented that there are significant unpaid debts to the state

and federal taxing authorities.  Indeed, this Court is already aware from the initial case

conference conducted in the Garden matter that in May 2010, Mr. Toro pled guilty under a plea

agreement with the Manhattan District Attorney (the "District Attorney") before the Supreme

Court for the State of New York "to charges of Grand Larceny, Offering a False Instrument for

Filing, and to a violation of Labor Law for unemployment insurance tax manipulation.  TORO

collected but failed to pay about more than $369,000 withheld from the payroll of the employees

of his bagel business."[12]  Mr. Toro reportedly avoided paying $206,151 in unemployment-

insurance taxes, between 2006 and 2009, by placing workers under shell companies.  As part of

the aforementioned plea agreement, Mr. Toro must reportedly make restitution totaling more

than $543,000 and as part of his sentencing, he is required to serve 50 weekends in jail, which

reportedly began July 24, 2010.

43.     It remains to be seen how 35 RELP will use its only property, the Leased

Premises, for the benefit of creditors.  The pattern of mismanagement, however, suggests that it

---

[12] See Statement of District Attorney Cyrus R. Vance, dated May 27, 2010 (available at
http://www.manhattanda.org/whatsnew/press/2010-05-27b.shtml).  The Case is People v. Toro, Case No.
05783/2009.

49060/0001-7499638v2

would be improper to allow the estate of 35 RELP to continue to be managed by the Debtors' pre-petition management, which, upon information and belief, consists solely of Mr. Toro acting through a general partner-corporation. The foregoing is evidence of the Debtors' pre-petition deleterious management style. The continuation of the Rent Receiver is warranted to avoid allowing the blatant mismanagement and illicit conduct to continue post-petition.

44.     The Rent Receiver's compliance with the Turnover Provisions should be excused. The relevant factors overwhelmingly demonstrate that the estate of 35 RELP is best managed by the Rent Receiver who was appointed by the New Jersey Court. The Rent Receiver should not be required to turnover any pre-petition amounts collected to date, nor should 35 RELP and Mr. Toro be permitted to collect Rental Payments from Garden. The Rent Receiver should remain in place and in possession of the pre-petition Rental Payments and continue to be the appropriate party to collect Post-Petition Rent Payments.

**B.     Ample Cause Exists To Warrant Vacating The Automatic Stay With Respect to Garden To Permit The Rent Receiver To Exercise All His Rights And Remedies For Garden's Non-Payment of Rent**

45.     To the extent the Court excuses the Rent Receiver from compliance with the Turnover Provisions, the Rent Receiver also requests that the Court vacate the automatic stay, pursuant to Section 362(d)(1), to permit the Rent Receiver to exercise all his rights and remedies with respect to the Leased Premises, including, without limitation, termination of the Lease and possession of the premises. Garden's repeated pattern of non-payment of rent and other obligations under the Lease, as chronicled herein, should **not** be allowed to persist post-petition.

46.     Section 362(d)(1) of the Bankruptcy Code provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay…

17

> (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

47.     Neither the Bankruptcy Code nor the legislative history of Section 362(d)(1) define the phrase "cause" and, therefore, it is given application on a case by case basis. "Cause" for purposes of relief from the automatic stay under Bankruptcy Code Section 362(d) is a broad and flexible concept, and the facts relating to each request will determine whether relief is appropriate under the circumstances. See In re The Score Board, Inc., 238 B.R. 585, 598 (D.N.J. 1999); see also In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (bankruptcy court must decide what constitutes "cause" to lift the automatic stay on a case-by-case basis); In re Wilson, 85 B.R. 722, 728 (Bankr. E.D. Pa. 1988) (same).

48.     The determination of whether "cause" exists to vacate the automatic stay is committed to the sound discretion of the bankruptcy court. See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990) (citing Holtkamp v. Littlefield (In re Holtkamp), 669 F.2d 505, 507 (7th Cir. 1982); In re Milstein, 304 B.R. 208, 211 (Bankr. E.D. Pa. 2004) (citations omitted); In re Syndicom Corp., 268 B.R. 26, 43 (Bankr. S.D.N.Y. 2001). In making this determination, courts must consider "the interests of the debtor, the claimant and the estate." In re MacInnis, 235 B.R. 255, 259 (Bankr. S.D.N.Y. 1998).

49.     While Section 362 of the Bankruptcy Code contains certain examples of what constitutes "cause" for relief from the stay, the list is not exhaustive and cause for relief from the automatic stay may be found in certain unenumerated factors such as "bad faith." See In re Kaplan Breslaw Ash, LLC, 265 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) (citing C-TC 9th Ave. P'ship, 113 F.3d 1304, 1313 (2d Cir. 1997).

50.     Although initially, the Rent Receiver as movant bears the burden of proof with respect to a motion to vacate the stay, the burden thereafter shifts to Garden.  See, e.g., Syndicom, 268 B.R. at 43 and 11 U.S.C. § 362(g).  Courts examine each case based upon the totality of the circumstances.  See, e.g., MacInnis, 235 B.R. at 260.

51.     Section 365(d)(3) mandates that a chapter 11 debtor in possession "shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property …."  11 U.S.C. § 365(d)(3).  In the present case, Garden has failed to honor this mandate, and has **not** timely performed **any** of its payment obligations under the Lease.  This is cause for relief from the stay.

52.     It is well-settled that a debtor in bankruptcy has "no greater rights or powers under a contract than the debtor would have outside of bankruptcy."  Valley Forge Plaza Assoc. v. Schwartz (In re Valley Forge Plaza Assoc.), 114 B.R. 60, 62 (E.D. Pa. 1990) (citing In re Heaven Sent Ltd. v. Commercial Union Ins. Co., 37 B.R. 597, 597-98 (Bankr. E.D. Pa. 1984); In re PSA, Inc., 335 B.R. 580, 588 (Bankr. D. Del. 2005) (finding it "clear that the filing of a bankruptcy petition does not permit a debtor in possession to enjoy greater contract or property rights than it possessed outside of bankruptcy case") (citing In re Island Helicopters, Inc., 211 B.R. 453, 464 (Bankr. E.D.N.Y. 1997) ("The filing of a bankruptcy petition does not expand the debtor's rights against others more than they exist at the commencement of the case")) (additional citations omitted).  Therefore, the ability to terminate a contract on its terms survives bankruptcy.  Valley Forge, 114 B.R. at 62; Shell Oil Co. v. Anne Cara Oil Co., Inc. (In re Anne Cara Oil Co., Inc.), 32 B.R. 643, 647 (Bankr. D. Mass. 1983) ("The general rule is…if the [non-debtor] party had a right to terminate the arrangement, that right survives adoption of the contract

by the trustee…[T]he right to terminate a contract pursuant to its terms survives the bankruptcy of other contracting party") (quoting <u>Thompson v. Texas Mexican Railway Co.</u>, 328 U.S. 134, 141-42 (1946)).

53.    Numerous courts have granted relief from the automatic stay to permit a non-debtor party to terminate an executory contract for cause.  <u>See</u> <u>In re M.J. & K Co., Inc.</u>, 161 B.R. 586 (Bankr. S.D.N.Y. 1993) (law school granted relief from automatic stay to serve notice and terminate license in real property with chapter 11 bookstore owner that was terminable at will); <u>In re Tudor Motor Lodge Assoc., Ltd. P'ship.</u>, 102 B.R. 936 (Bankr. D.N.J. 1989) (permitting termination of license agreement for having materially breached the license agreement and not providing adequate protection); <u>Sementelli v. Stagedoor, Inc. (In re Stagedoor, Inc.)</u>, 32 B.R. 13, 14 (Bankr. W.D. Pa. 1983) (non-debtor party granted relief from the automatic stay to terminate unexpired lease where the debtor exhibited a continuous history of default on monthly payments and cancellation of insurance).  For example, in <u>Tudor Motor Lodge</u>, Days Inn of America Franchising, Inc. ("<u>DIAF</u>") moved for relief from the automatic stay to terminate a license agreement with Tudor Motor Lodge Associates ("Tudor").  Pursuant to the license agreement, Tudor was required, among other things, to complete its construction obligations in accordance with the agreement or DIAF could, in its sole discretion, terminate the agreement.  Tudor did not perform the construction work agreed upon and failed to meet other obligations to bring the premises into compliance with DIAF's standards.  The court held that those defaults constituted material breaches of the license agreement and diminished the value of DIAF's reputation. Accordingly, the court determined that Tudor failed to adequately protect DIAF's interest and granted DIAF relief from the automatic stay to terminate the license agreement.

49060/0001-7499638v2

54.     Similarly, here, the post-petition breach of the Lease which remains uncured as of the date hereof, constitutes "cause" under Section 362(d)(1) of the Bankruptcy Code to vacate the automatic stay and permit the Rent Receiver to terminate the Lease.  As set forth above, Garden has a long and tortured history of not paying rent and other obligations under the Lease. Only relief from the automatic stay will resolve this issue.

55.     Lastly, courts may also consider a debtor's lack of good faith in filing its bankruptcy petition as sufficient cause to grant relief from the automatic stay.  See, e.g., Syndicom, 268 B.R. 37-44; 49-56; MacInnis, 235 B.R. at 260 (citing Sonnax, 907 F.2d at 1287; RCM Global Long Term Capital Appreciation Fund, Ltd., 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996)).  Whether a petition is filed in good faith is examined using the following factors: (i) the debtor has only one asset; (ii) the debtor has few unsecured creditors whose claims are small in relation to its secured creditors; (iii) the debtor's one asset is subject to a foreclosure action due to arrearages or defaults on the debt; (iv) the debtor's financial condition and whether it is due to what is merely a two-party dispute; (v) timing of the debtor's filing evidences intent to delay or frustrate legitimate efforts of the debtor's secured creditors to enforce their rights; (vi) the debtor has little or no cash flow; (vii) the debtor cannot meet current expenses including payment of personal property or real estate taxes; and (viii) the debtor has no employees.  See, e.g., Syndicom, 268 B.R. at 50 (quoting C-TC 9th Ave., 113 F.3d at 1311) (additional citation omitted).  The ultimate aim in requiring bankruptcy petitions be filed in good faith is to ensure that neither judicial process nor this Court's jurisdiction are abused and chapter 11 is only used for legitimate reorganization purposes.

56.     While the Rent Receiver believes there is already ample cause herein to warrant relief from the automatic stay due to Garden's failure to pay the Post-Petition Rent, for

49060/0001-7499638v2

avoidance of doubt, there is also cause to grant relief on the basis that Garden filed its petition in bad faith. As is clear from an examination of Garden's petition, and observance of the hearings and Section 341 Meeting, several if not a substantial majority of the aforementioned factors for bad faith are present here.

57. Garden has openly admitted to filing its petition to delay the Rent Receiver's ability to enforce his rights (and those of creditor DLC Services Corp.). As this Court is aware, Garden filed its petition immediately after the Rent Receiver prevailed in the action to dispossess Garden due to its extensive history of non-payment of Rental Payments under the Lease.

58. Garden has also openly admitted that it is not now nor is it likely that it will be able to meet its current expenses. Indeed, Garden is not even aware if it is operating at a profit. Due to Garden's failure to timely file its MOR, it remains unclear whether it has any cash flow, but upon information and belief, given its recent representations to the Court, Garden does not likely have any much less sufficient cash flow.

59. Lastly, it remains to be seen if Garden indeed has any employees. Garden is part of a network of related entities, including upon information and belief, several iterations of "Toro Family Limited Partnerships" and Jersey Emplyees[sic], which may ultimately be the entities that employ any actual workers for Garden's purported manufacturing business.

60. The Rent Receiver believes that the foregoing demonstrates ample cause to warrant relief from the automatic stay, first and foremost due to Garden's continued non-payment of its post-petition obligations under the Lease and secondarily due to the lack of good faith in filing its petition. To the extent Garden attempts to argue otherwise, the Court should disregard any argument by Garden that the Leased Premises are necessary to its reorganization efforts. For Garden to prevail with such assertions requires a showing that Garden's prospects

49060/0001-7499638v2

for reorganization are more than just a pipe-dream.  See, e.g., In re Balco Equities, Ltd., 312 B.R. 734, 752 (Bankr. S.D.N.Y. 2004).  Indeed, a debtor must present more evidence than "ipse dixit contentions" (see Syndicom, 268 B.R. at 55) and in order to maintain the property, a debtor bears the "burden to establish that the property in question is 'essential for an effective reorganization *that is in prospect.*'"  In re State Street Assocs., L.P., 342 B.R. 32, 39 (quoting United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 808 F.2d 363, 376 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988)) (emphasis in original).  Accordingly, it is not enough that Garden claims to need the property; rather, Garden must show that it has a reorganization in prospect for which the property is required.  Here, there is no reorganization prospect.

61.     As of the date hereof, Garden has only produced a letter of intent that contains several serious contingencies and indeed, no formal agreement or proposal has yet been presented to this Court or the other parties-in-interest.  While Garden has represented that the equity investor, Krest Capital, will make parties such as the Rent Receiver whole, upon information and belief, Krest Capital was unaware of the extensive debts of each of the Debtors and their affiliates and upon information and belief, despite attempting to negotiate a transaction for the past two years, no transaction has yet materialized and a transaction now to rescue the Debtors is unlikely.

62.     Ultimately, the Rent Receiver cannot sit idly by to watch the judicial process continue to be abused before another card in the Debtors' charade is played.  Garden has enjoyed continuous use and occupancy of the Leased Premises for more than a year without having remitted the requisite Rental Payments.  Garden should not be permitted now to use this Court's protections to continue to avoid making the Rental Payments when the Bankruptcy Code expressly provides that Garden is obligated to timely perform its obligations.

49060/0001-7499638v2

63. The Rent Receiver respectfully requests that based on the foregoing, the Court grant his request to vacate the automatic stay to permit the Rent Receiver to exercise all his rights and remedies under New Jersey State law, including, termination of Garden's tenancy.

WHEREFORE, the Rent Receiver respectfully requests that the Court enter an Order granting the Motion and such other relief as the Court deems just and appropriate under the circumstances.

DATED:  New York, New York
         April 5, 2011

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
A Professional Corporation
*Attorneys for Raymond E. Bulin, Rent Receiver*
*Appointed by the Superior Court of New Jersey,*
*Hudson Vicinage, for the Mortgaged Property*
*Owned By 35 Real Estate Limited Partnership*

By: _/s/ Leo V. Leyva_
    Leo V. Leyva
    Jill B. Bienstock
    900 Third Avenue, 16th Floor
    New York, NY 10022
    Telephone (212) 752-8000
    Facsimile (212) 752-8393
    E-mail: lleyva@coleschotz.com
    E-mail: jbienstock@coleschotz.com

49060/0001-7499638v2